## BURT v. RICHMOND.

(District Court, D. Vermont. March 21, 1901.)

INSOLVENT NATIONAL BANK—STOCKHOLDER'S LIABILITY—DETERMINATION ON AGREED STATEMENT.

Where, on an issue as to whether defendant was liable as a stockholder of an insolvent national bank, it appears from an agreed statement as to what the bank books and reports show that, at the time the four shares in question purported to have been transferred to him by the president, the latter's stock was all pledged, it must be held that defend-

ant acquired no stock, and never in reality became a legal shareholder, and hence is not subject to a shareholder's liabilities.[1]

At Law.

John H. Senter, for plaintiff.
Hiram A. Huse, for defendant.

WHEELER, District Judge. The plaintiff is receiver of the First National Bank of Alma, Kan., and this suit is brought to recover $44 per share assessed by the comptroller on 4 shares of stock standing upon the books of the bank to the name of the defendant. It has been submitted upon an agreed statement as to what the books and reports of the bank show concerning him as a legal stockholder. These are evidence between the corporation, its officers and members. They show that the bank had an authorized capital of $75,000, in 750 shares, of $100 each. The list of shareholders on the first Monday in July, 1899, shows the name of shareholders of 750 shares, with 174 to that of John F. Limerick, who was the president, none to that of the defendant, and none to any one else of as many as 35 shares, except these to Limerick and 150 to R. H. Miller. That on the first Monday of July, 1890, shows names of holders of 750 shares, with 132 to that of Limerick, 150 to that of Miller, and none to any other of as many as 35 shares, and 4 to that of the defendant. That of November 10, 1890, the time of suspension, shows names of holders of 755 shares, with 87 to that of Limerick, 150 to that of Miller, 35 to that of L. P. Nelson, none to any other of as many as 35 shares, and 4 to that of the defendant. An account of stock from the beginning shows entries concerning 895 shares, of which 131 are expressly of transfers, and 17 purport to be, leaving entries concerning 747 original shares, of which 186 purport to have been issued to Limerick and 150 to Miller, and not so many as 35 to any one else, and concerning 35 shares transferred to Nelson, not 35 to any one else, and 4 to the defendant. An account with Limerick shows him charged with the amount of 680 shares, $68,000, and credited with amount of 593 shares, $59,300, leaving $8,700, equal to his 87 shares, as shown in the last list of stockholders. This account names Miller as holder of 150 shares, Nelson of 35, and no one else but Limerick of as many as 35, and the defendant of 4. His is No. 128, transferred to him September 17, 1889, and the latest of any of these. The stubs of 2 certificates issued to Limerick for 50 shares each, 8 for 35 each (Nos. 19, 20, 21, 22, 23, 26, 27, and 28), 2 for 20 each, 1 for 15, 1 for 10 and 1 for 1, each, are marked "Canceled"; and stubs show certificates Nos. 32, 33, 35, 36, 40, 54, and 55, issued to Limerick, and not appearing to be canceled. And 13 certificates of 35 shares each were pledged by Limerick, 1 to each of 13 different banks, being Nos. 19, 21, 22, 25, and 27 of the 8 certificates the stubs of which are marked "Canceled," and Nos. 32, 33, 35, 36, 40, and 55 of the 7 certificates of that amount the stubs of which do not appear to be canceled, and Nos. 235 and 240

---

[1] Who liable as shareholders in national banks, see note to Beal v. Bank, 15 C. C. A. 130.

to secure notes of his of $2,500 each, and all but 2 (Nos. 27 and 40) at dates earlier than the transfer of the certificate of 4 shares from Limerick to the defendant. None of these 35-share certificates so pledged to these other banks appear at all in, or could have gone into, the stock account resulting in 785 outstanding shares at the close of the bank; and there were then outstanding 1,190 shares, 280 of which belonged to the stubs marked "Canceled," and 70 of which were those of certificates Nos. 235 and 240, dated, respectively, July 29, 1889, and November 26, 1888. The 5 certificates from canceled stubs may have been wholly void when pledged, and so not have been stock outstanding for any purpose; but, if so, there would remain the 6 certificates of 35 shares each uncanceled, amounting to 210 shares pledged to the banks and not in the stock account, making 995 shares outstanding before the transfer to the defendant. Neither the 87 shares standing to the name of Limerick at the close of the bank, nor the 132 shares on the first Monday of July, 1890, nor the 174 shares, on the first Monday of July, 1899, could make this number good. All these 35-share certificates, as well as the defendant's 4-share certificate, came from Limerick; and, as there appear no earmarks by which either can be said to have come from any particular prior certificates, all of his stock was gone to the banks, and more would have been if he had had it, before the defendant could have any. The omission of the 35-share certificates from the stock account current was a matter of mere bookkeeping, which would not alter the legal effect of the transactions. So the defendant got no stock, and never in reality became a shareholder. Without becoming a shareholder, he would, of course, not be entitled to the advantages nor subject to the liabilities of a shareholder. Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968. So, upon the agreed case, the plaintiff has no right of recovery. Judgment for defendant.